UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MARCUS KIMBROUGH                                    CIVIL ACTION

VERSUS                                                      NO. 17-5722

TEXTRON SYSTEMS MARINE &                      SECTION "R" (4)
LAND SYSTEMS

## ORDER AND REASONS

Defendant Textron Systems Marine & Land Systems moves for summary judgment.[1] For the following reasons, the Court grants the motion.

## I.     BACKGROUND

Plaintiff Marcus Kimbrough was hired by defendant Textron Systems Marine & Land Systems (Textron) as a senior welder in October 2016.[2] On Friday, October 28, 2016, plaintiff overheard a racist remark by Jimmy Corley.[3] Corley was a Textron supervisor, though he did not supervise plaintiff.[4] Corley was talking to two other employees about a work event and told them "to hurry up and get it before all these black mother-fuckers eat all

---

[1]     R. Doc. 16.
[2]     R. Doc. 1 at 2 ¶ 8.  Textron Systems Marine & Land Systems is a division of Textron, Inc.  *Id.* at 1 ¶ 3.
[3]     R. Doc. 23-1 at 9; *see also* R. Doc. 16-4 at 2.
[4]     R. Doc. 23-1 at 7.

1

the pizza."[5] Corley had not seen plaintiff, who is black, when he made this remark.[6]

Plaintiff immediately reported Corley's remark to Sam Galloway, plaintiff's supervisor.[7] As the day progressed, according to plaintiff, Corley and other employees found out about plaintiff's complaint.[8] At some point, Corley allegedly told plaintiff—who was underneath a truck—to watch out so that nothing would fall on him.[9] Ten minutes later, according to plaintiff, a crowbar fell and injured his leg.[10] Corley also allegedly stared down plaintiff that day.[11]

Plaintiff complains of several alleged acts of harassment that occurred on the following Monday, October 31. First, Galloway's boss allegedly followed plaintiff to the snack machine and to the bathroom, where he peeked at plaintiff through a hole in the stall.[12] Second, a coworker allegedly told plaintiff that other coworkers were demeaning plaintiff—such as by stating that "he's a clown, he's not a man"—for reporting Corley's racist

---

[5] *Id.*
[6] *Id.*
[7] *Id.* at 5, 10.
[8] *Id.* at 14-15.
[9] *Id.* at 19.
[10] *Id.* at 17-19.
[11] *Id.* at 17.
[12] *Id.* at 23-24, 70.

remark.[13]  Third, upper-level managers whom plaintiff had not seen before were allegedly at the Textron facility and stared at plaintiff.[14]  Fourth, Galloway allegedly told plaintiff to let a white employee use plaintiff's welding machine, even though there was another available welding machine nearby.[15]  Galloway also allegedly raised his voice and told plaintiff to clean up his area.[16]  According to Katherine Lishman, a Textron human resources employee at the time, Corley was suspended on October 28 and terminated the following week.[17]  Plaintiff did not return to work after October 31, and formally resigned his employment on November 3.[18]

Plaintiff filed a charge of racial discrimination and retaliation with the EEOC on November 1, 2016.[19]  After receiving his right to sue letter, plaintiff filed suit on June 11, 2017.  Plaintiff asserts claims of racial discrimination, racially hostile work environment, and retaliation in violation of Title VII, and intentional infliction of emotional distress.  Defendant now moves for summary judgment on plaintiff's claims.[20]

---

[13]    *Id.* at 25.
[14]    *Id.* at 23, 27, 80.
[15]    *Id.* at 29-31.  Plaintiff regained use of his welding machine after thirty minutes.  *Id.* at 30-31.
[16]    *Id.* at 32.
[17]    R. Doc. 16-4 at 3-4.
[18]    *Id.* at 5.
[19]    R. Doc. 1 at 10.
[20]    R. Doc. 16.

## II.    LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Little*, 37 F.3d at 1075. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went

uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g.*, *id.*; *Little*, 37 F.3d at 1075 ("Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." (quoting *Celotex*, 477 U.S. at 322)).

## III.  DISCUSSION

### A.    Hostile Work Environment

Title VII prohibits employers from "discharg[ing] any individual, or otherwise . . . discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Title VII is violated "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations and internal quotation marks omitted).

The Supreme Court has distinguished between cases in which a hostile work environment is created by the plaintiff's coworkers and cases in which the hostile work environment is created by the plaintiff's supervisors.  *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).  A prima facie case of a hostile work environment by coworkers requires proof that the plaintiff

> (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; [and] (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

6

*Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)). When the plaintiff's supervisors are responsible, the plaintiff need not satisfy the fifth element. In other words, the employer can be held vicariously liable for the supervisors' actions without any showing that the employer was personally negligent. *See Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999). But an employer may avoid vicarious liability in such a case if it can prove "(a) that [it] exercised reasonable care to prevent and correct promptly any . . . harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher*, 524 U.S. at 807.

Title VII prohibits harassment that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *EEOC v. Boh Bros.* Constr. Co., 731 F.3d 444, 452 (5th Cir. 2013) (internal quotation marks and citation omitted). The harassment must be "both objectively and subjectively abusive." *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 325 (5th Cir. 2004). In determining whether harassment is objectively so severe or pervasive that it alters the conditions of the plaintiff's employment, courts look to the "totality

of circumstances," including "the frequency of the conduct, the severity of the conduct, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996). But "[t]he harassment must consist of more than 'simple teasing, offhand comments, and isolated incidents (unless extremely serious).'" *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 401 (5th Cir. 2013) (quoting *Faragher*, 524 U.S. at 788).

Plaintiff's hostile work environment claim is based on several distinct acts of alleged harassment: Corley's racist remark; Corley's warning to watch out for falling objects, followed by the crowbar incident; stalking and excessive monitoring by upper-level Textron managers; demeaning statements about plaintiff by white coworkers; Galloway's instruction to let a white coworker use plaintiff's welding machine for thirty minutes; and Galloway's excessive criticism of plaintiff's workspace.[21] These acts all took place on either Friday, October 28 or Monday, October 31, 2016. The acts of Galloway and upper-level managers were acts by supervisors, while Corley's actions, the crowbar incident, and the demeaning statements involved coworkers. Although Corley was a Textron supervisor, he never supervised

---

[21]     *See* R. Doc. 23 at 8-11.

plaintiff.[22]  *See Faragher,* 524 U.S. at 807 ("An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a *supervisor with immediate (or successively higher) authority over the employee.*" (emphasis added)).

Plaintiff also points to harassment experienced by another black employee at Textron, LaVell Lane.  Lane testified in a deposition that Galloway and Corley both used racial slurs, that Textron supervisors excessively monitored him and other black employees, that Galloway excessively criticized him, and that racial epithets were scrawled on a bathroom stall and a toolbox at defendant's facility.[23]  Defendant argues that this evidence is irrelevant to plaintiff's claim.  But a plaintiff may be "allowed to introduce evidence of discrimination of others," at least "for some purposes."  *Hernandez,* 670 F.3d at 653.  For example, the Fifth Circuit has held that evidence of harassment experienced by other members of the plaintiff's protected group is relevant to show a hostile work environment. *Id.* (noting the court's prior holding that "in the context of sex discrimination[,] . . . harassment of women other than the plaintiff is relevant

---

[22]     *See* R. Doc. 23-1 at 7.
[23]     R. Doc. 23-6 at 14, 23-26, 28, 30.

to a hostile work environment claim" (citing *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 477-78 (5th Cir. 1989)).

Of the allegedly harassing acts experienced by plaintiff, the most serious is the crowbar incident. Plaintiff characterizes Corley's warning to watch out for falling objects as a threat, and suggests that he was deliberately hit by the crowbar in retaliation for reporting Corley's racist comment.[24] Plaintiff also points to Corley's "staring [him] down."[25] Such physically threatening conduct may be sufficiently severe to satisfy the fourth element of a hostile work environment claim. *See Weller*, 84 F.3d at 194.

But plaintiff fails to raise a genuine dispute as to whether the crowbar incident actually constituted harassment based on race. Plaintiff relies on two inferences: (1) plaintiff was in fact deliberately hit by the crowbar, *i.e.*, it was not an accident; and (2) the person who deliberately caused the crowbar to hit plaintiff intended to retaliate for plaintiff's complaint against Corley. If both inferences were plausible, then the crowbar incident could be sufficiently imbued with "racial character or purpose" to satisfy the third element of plaintiff's hostile work environment claim. *Watkins v. Tex. Dep't of Criminal Justice*, 269 F. App'x 457, 464 (5th Cir. 2008) (quoting *Hardin*

---

[24]    R. Doc. 23-1 at 19.
[25]    *Id.* at 17.

*v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 345 (7th Cir. 1999)). But both inferences lack evidentiary support. Clay Adkins, a Textron employee supervised by Corley, stated in an affidavit that he was working on the upper level of a work station on October 28 when he set down his crowbar.[26] The crowbar fell through a hole in the floor to the lower level, where it hit plaintiff.[27] According to Adkins, his crowbar fell accidentally.[28] Adkins also stated that he was unaware of plaintiff's complaint when the crowbar fell.[29] According to Lishman, Textron conducted an internal investigation of the crowbar incident and found both that it was an accident and that at the time, no one other than Galloway knew about plaintiff's complaint against Corley.[30]

The only evidence suggesting that the crowbar incident was no accident is plaintiff's own testimony.[31] Plaintiff testified in a deposition that he believed the crowbar incident was related to his earlier complaint against Corley because Corley tapped him on his shoulder and warned him about falling objects ten minutes before the crowbar fell, and because plaintiff was

---

[26] R. Doc. 16-7 at 3.
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] R. Doc. 16-4 at 5.
[31] R. Doc. 23-1 at 19.

underneath, rather than to the side of, the truck.[32]  Plaintiff fails to explain

the relevance of his location underneath the truck, and fails to present any

evidence suggesting that Corley, or someone acting in concert with Corley,

deliberately dropped the crowbar.  Indeed, plaintiff stated in his deposition

that he did not know who dropped the crowbar, or how it happened.[33]

Plaintiff further stated that, to his knowledge, the person who dropped the

crowbar did not know about plaintiff's complaint against Corley.[34]  Plaintiff

asserts that Corley knew about the complaint when Corley warned plaintiff

to watch out for falling objects because Corley had been looking at plaintiff

that day.[35]  Without more, however, this scintilla of evidence does not

support the reasonable inference that Corley knew about plaintiff's

complaint at that time.  Thus, plaintiff's assertion that Corley's warning and

the crowbar incident were related to his earlier complaint against Corley is

mere speculation, and cannot support his hostile work environment claim.

*See McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012) ("Summary

judgment may not be thwarted by conclusional allegations, unsupported

assertions, or presentation of only a scintilla of evidence."); *Byers v. Dall.*

---

[32]     *Id.*
[33]     R. Doc. ___ at 4.
[34]     *Id.* at 6.
[35]     *Id.* at 17.

*Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000) (noting that a plaintiff's "subjective belief" that he was discriminated against is not sufficient evidence of discriminatory intent).

The other conduct of which plaintiff complains fails to raise a genuine dispute as to whether plaintiff experienced a hostile work environment. Each alleged act was relatively mild. Corley's remark, though obviously offensive, was an offhand comment that was not directed at plaintiff.[36] *See Royal*, 736 F.3d at 401. The allegedly demeaning statements by plaintiff's coworkers and Galloway's criticism of the cleanliness of plaintiff's workspace did not rise above "the ordinary tribulations of the workplace" tolerated by Title VII.[37] *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006));

---

[36] Additionally, defendant promptly remedied Corley's racist remark (and, by extension, his warning to watch out for falling objects) by suspending Corley on October 28 and terminating him the following week. "Prompt remedial action must be reasonably calculated to end the harassment." *Skidmore v. Precision Printing & Pkg., Inc.*, 188 F.3d 606, 615 (5th Cir. 1999) (internal quotation marks and citation omitted). Clearly, Corley's immediate suspension and subsequent termination were reasonably calculated to end his alleged harassment of plaintiff.

[37] Moreover, the only evidence of the allegedly demeaning statements is plaintiff's own testimony. But plaintiff did not actually hear these statements. Instead, he learned of them from another welder, who allegedly overheard the statements. R. Doc. 23-1 at 25. Plaintiff did not internally complain about his coworkers' demeaning statements before his resignation. Nor is there any other evidence that defendant knew or should have known of these statements.

*see also Brown v. Liberty Mut. Grp., Inc.*, 616 F. App'x 654, 657 (5th Cir. 2015) (noting that "job-related criticisms . . . are unlikely to support a hostile work environment claim").  Additionally, there is no indication that Galloway acted outside his managerial discretion in instructing plaintiff to permit a white coworker to use plaintiff's welding machine.  Nor did this act severely interfere with plaintiff's work: plaintiff regained use of his welding machine in thirty minutes.  Finally, there is no indication that plaintiff was physically threatened by upper-level managers' staring at and following him.  *See Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1249 (11th Cir. 1999) (en banc) (holding that non-threatening staring and following do not create a hostile work environment); *see also Wilkinson v. Potter*, 236 F. App'x 892, 893 (5th Cir. 2007) (finding that "short, almost daily periods where [coworker] stared at [plaintiff]" did not create hostile work environment).  That these incidents all occurred on one day suggests that the harassment experienced by plaintiff was not pervasive.  *Cf. Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 164 (5th Cir. 2007) (finding that supervisor's harassment was pervasive because he called plaintiff "ten to fifteen times a night for almost four months").

The acts of harassment allegedly experienced by LaVell Lane do not raise a genuine dispute as to whether plaintiff's work environment was

sufficiently abusive. Indeed, there is no evidence that plaintiff had witnessed, or was even aware, of those acts. *See White v. Gov't Emps. Ins. Co.*, 457 F. App'x 374, 382 n.32 (5th Cir. 2012) ("Because there is no evidence that [plaintiff] was aware of the remarks made behind her back, those alleged comments could not have contributed to a hostile work environment."); *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1522 (11th Cir. 1995) (holding that because "some of the incidents relied upon were not made known to [plaintiff] until after her termination," they "could not have contributed to her subjective view of a hostile environment"). Because plaintiff was not aware of the harassment experienced by Lane, this harassment could not have not contributed to plaintiff's subjective perception of a hostile work environment. Even considering Lane's testimony about the harassment he experienced, some of which appears to have been remedied before plaintiff was even hired,[38] Lane's testimony, together with plaintiff's other evidence of harassment, is insufficient to raise a genuine dispute as to whether conditions at Textron were so abusive as to create a hostile work environment.

---

[38] According to Lane, Textron investigated the racist graffiti and terminated an employee based on that investigation in 2015 or 2016. R. Doc. 23-6 at 11, 26, 38. Plaintiff, who was hired in October 2016, did not mention any racist graffiti during his deposition.

There is no genuine dispute that plaintiff's work environment was not so abusive that it altered the terms and conditions of plaintiff's employment. The one severe incident of which plaintiff complains—the crowbar incident—is connected to plaintiff's race only by speculation. Defendant is therefore entitled summary judgment on plaintiff's hostile work environment claim.

### B.    Racial Discrimination

To establish a prima facie case of discrimination under the *McDonnell Douglas* burden-shifting framework,[39] *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), "an employee must demonstrate that she '(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group.'" *Morris v. Town of Independence*, 827 F.3d 396, 400 (5th Cir. 2016) (quoting *Willis v. Cleco Corp.*, 749 F.3d 314, 319-20 (5th Cir. 2014)).

---

[39]    The only direct evidence of racial discrimination cited by plaintiff is Corley's racist remark, which was not directed at plaintiff and was promptly remedied. *See Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 310 n.6 (5th Cir. 2004).

Defendant seeks summary judgment on the ground that plaintiff did not suffer an adverse employment action because he resigned from his employment at Textron. Plaintiff argues that he was constructively discharged. "In determining whether an employer's actions constitute a constructive discharge," courts consider "whether 'working conditions became so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'" *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 480 (5th Cir. 2008) (quoting *Penn. State Police v. Suders*, 542 U.S. 129, 141 (2004)). An employee may be constructively discharged in several ways, including by:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer were accepted or not.

*Id.* at 481 (quoting *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 771-72 (5th Cir. 2001)). Constructive discharge based on harassment "must demonstrate a greater severity or pervasiveness . . . than the minimum required to prove a hostile working environment." *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 991 (5th Cir. 2008) (quoting *Landgraf v. USI Film Prods.*, 968 F.2d 427, 430 (5th Cir. 1992)).

Plaintiff asserts that he was compelled to resign because he felt his safety was in jeopardy.[40]  In his deposition, plaintiff stated: "I didn't feel safe working there.  I felt like I was always being watched and I just didn't feel safe at all working there anymore."[41]  Plaintiff decided to resign because of the events that occurred on October 28 and October 31, 2016—Corley's racist remark, the crowbar incident, and Galloway's boss's following plaintiff into the bathroom.[42]

Plaintiff has failed to raise a genuine dispute as to whether a reasonable person in his position would have felt compelled to resign.  As explained earlier, insufficient evidence exists to support the reasonable inference that the crowbar incident involved deliberate action by a Textron employee. There is also no evidence that Corley knew about plaintiff's complaint when he warned plaintiff about falling objects.  Thus, plaintiff fails to raise a genuine dispute as to whether Corley's warning and the crowbar incident were "calculated to encourage the employee's resignation." *Aryain*, 534 F.3d at 481.  The other acts of harassment experienced by plaintiff were not sufficiently severe or pervasive to support a hostile work environment claim.

---

[40]  R. Doc. 23 at 18.
[41]  R. Doc. 23-1 at 46.
[42]  *See id.*

As a matter of law, therefore, these acts of harassment cannot establish constructive discharge. *Stover*, 549 F.3d at 991.

Moreover, plaintiff did not return to work after October 31, and formally resigned a couple days later. Plaintiff made no attempt to report the harassment he experienced on October 31. The Fifth Circuit has held that such a rapid resignation, without any attempt to internally resolve any issues, may be unreasonable under the circumstances. *See Haley v. All. Compressor LLC*, 391 F.3d 644, 652 (5th Cir. 2004); *Boze v. Branstetter*, 912 F.2d 801, 805 (5th Cir. 1990). Indeed, "part of an employee's obligation to be reasonable is an obligation not to assume the worst, and not to jump to conclusions too fast." *Aryain*, 534 F.3d at 481 (quoting *Dornhecker v. Malibu Grand Prix Corp.*, 828 F.2d 307, 310 (5th Cir. 1987)). In some cases, an employee "might have an objective basis for concluding that further reports of harassment would be futile." *Woods v. Delta Beverage Grp., Inc.*, 274 F.3d 295, 300 (5th Cir. 2001). For example, an employee likely would not feel comfortable lodging a complaint about a supervisor with that same supervisor. But plaintiff had other reporting options. According to Textron's Business Conduct Guidelines, which plaintiff received merely two weeks before the alleged harassment,[43] Textron employees could report behavior to

---

[43] R. Doc. 16-9.

19

human resources employees or via a helpline.[44]   Moreover, there is no evidence that plaintiff had reason to believe that a complaint through one of these channels would be futile.   Indeed, Textron clearly heeded plaintiff's October 28 complaint against Corley, who was immediately suspended pending an internal investigation.   Because plaintiff cannot raise a genuine dispute as to whether he suffered an adverse employment action, defendant is entitled summary judgment on plaintiff's racial discrimination claim.

## C.   Retaliation

Title VII makes it unlawful for an employer to discriminate against an employee who has opposed an employment practice made unlawful by Title VII.   42 U.S.C. § 2000e-3(a).   In order to state a retaliation claim, a plaintiff must allege "(1) that [she] engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action." *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002).

"An employee has engaged in protected activity when she has (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII."   *Douglas v.*

---

[44]      R. Doc. 16-8 at 6.

*DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 372 (5th Cir. 1998) (quoting 42 U.S.C. § 2000e-3(a)). An adverse employment action for purposes of retaliation "is one that 'a reasonable employee would have found to be materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Hernandez*, 670 F.3d at 657 (alterations omitted) (quoting *Aryain*, 534 F.3d at 484). But "[t]he actions of ordinary employees are not imputable to their employer unless they are conducted 'in furtherance of the employer's business.'" *Id.* (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 306 (5th Cir. 1996)). Causation for purposes of showing retaliation requires showing that the plaintiffs protected activity was a but-for cause of the adverse employment action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

Plaintiff asserts that he opposed a practice made unlawful by Title VII when he complained about Corley's racist remark.[45] He argues that the crowbar incident, his supervisors' excessively monitoring and following him, and the other alleged acts of harassment were adverse employment actions caused by his complaint.

---

[45] R. Doc. 23 at 19.

As an initial matter, the crowbar incident is not evidence of retaliation because there is insufficient evidence showing that plaintiff was deliberately hit by the crowbar. Likewise, there is insufficient evidence showing that plaintiff would not have been hit by the crowbar but for his protected activity. Thus, plaintiff fails to raise a genuine dispute as to whether there was a causal nexus between his complaint against Corley and the crowbar incident.

Plaintiff essentially argues that the other alleged instances of harassment amount to a retaliatory hostile work environment.[46] Plaintiff's complaint against Corley and the alleged acts of harassment that took place on October 31 were very close in time; this temporal proximity suffices to establish a causal nexus. *See Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) ("A plaintiff alleging retaliation may satisfy the causal connection element by showing '[c]lose timing between an employee's protected activity and an adverse action against him.'" (quoting *McCoy v. City of Shreveport*, 492 F.3d 551, 562 (5th Cir. 2007)). But, as explained earlier, the harassment allegedly experienced by plaintiff was not severe or pervasive enough to alter the terms or

---

[46] The Fifth Circuit has not yet recognized a retaliation claim based on a hostile work environment, but every other circuit has. *See Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 742 n.5 (5th Cir. 2017).

conditions of employment.[47]   Nor was it severe or pervasive enough to "dissuade[] a reasonable worker from making or supporting a charge of discrimination."   *Hernandez*, 670 F.3d at 657; *see also Bryan v. Chertoff*, 217 F. App'x 289, 293-94 (5th Cir. 2007) (applying the hostile work environment standard in holding that plaintiff failed to establish a retaliatory hostile work environment claim).   Thus, defendant is entitled summary judgment on plaintiff's retaliation claim.

### D.   Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress, a plaintiff must allege that: (1) the defendant's conduct was extreme and outrageous; (2) the emotional distress suffered by the plaintiff was severe; and (3) the defendant intended to inflict severe emotional distress, or knew that such distress would be certain or substantially certain to result from his conduct.   *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La.1991).   To satisfy the first element, the defendant's conduct must "go beyond all possible bounds of decency, and . . . be regarded as atrocious and utterly intolerable in a civilized community."   *Id.*   Such conduct "does not extend to mere

---

[47]    Although Title VII's "antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm," *White*, 548 U.S. at 67, plaintiff does not point to any instances of harassment other than those discussed earlier.

insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." *Id.*

"[I]n a workplace setting," Louisiana courts have "limited the cause of action to cases which involve a pattern of deliberate, repeated harassment over a period of time." *Nicholas v. Allstate Ins. Co.*, 765 So. 2d 1017, 1026 (La. 2000). At the same time, "[a] plaintiff's status as an employee may entitle him to a greater degree of protection from insult and outrage by a supervisor with authority over him than if he were a stranger." *White*, 585 So. 2d at 1210.

Plaintiff has failed to point to evidence of "deliberate, repeated harassment over a period of time." *Nicholas*, 765 So. 2d at 1026. The harassment of which plaintiff complains occurred over only two days, and most of the allegedly harassing acts were not particularly serious. Only the crowbar incident could be considered extreme and outrageous. But, as explained earlier, plaintiff merely speculates that he was deliberately hit by the crowbar. Thus, defendant is entitled summary judgment on plaintiff's claim for intentional infliction of emotional distress.

## IV. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is GRANTED. Plaintiff's complaint is DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this __30th__ day of April, 2018.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE